Pier Paolo Caputo, Esq. (SBN 176698)
LAW OFFICES OF PIER PAOLO CAPUTO
275 South Beverly Drive Suite 202
Beverly Hills, Calif. 90212
Telephone: (213) 291-6990
Facsimile:  (213) 406-1252
paulcaputolawoffice@gmail.com

Attorneys for Plaintiffs:
GUADALUPE ELIAS GUTIERREZ and JUAN DE DIOS GUTIERREZ

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT COURT OF CALIFORNIA**

| | |
|---|---|
| Guadalupe Elias Gutierrez And Juan De Dios Gutierrez<br><br>     Plaintiffs,<br><br>vs.<br><br>Bac Home Loan Servicing, Lp Fka Countrywide Home Loans Servicing Lp; Mortgage Electronic Registration Systems, Inc., A Delaware Corporation; Recontrust Company, N.A., A National Association; Fannie Mae A Government Sponsored Enterprise; All Persons Unknown, Claiming Any Legal Or Equitable Right, Title Estate, Lien Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff's Title Thereto, And Does 1 To 10⁰, Inclusive.<br><br>    Defendants. | Case No.: CV11-7737 ASW<br><br>**Complaint For Damages And Equitable Relief For:**<br><br>1) **Violation Of Equal Credit Opportunity Act** 15 U.S.C. §§ 1691(A)<br><br>2) **Unfair And Unlawful Business Practices** B&P 17200<br><br>Punitive Damages Demanded And Jury Trial Requested |

**COMES NOW** the Plaintiffs, who, for just cause, allege as follows:

# GENERAL ALLEGATIONS

1. Guadalupe Elias Gutierrez and Juan de Dios Gutierrez ("Plaintiffs") are, and at all times mentioned herein, were individuals residing in the County of Riverside, State of California.

2. Plaintiffs are informed and believe and thereupon allege that Defendant BAC Home Loan Servicing, LP ("BAC Home Loan") is, and at all times mentioned herein, was a national banking association organized and existing under the laws of the United States of America.

3. Plaintiffs are informed and believe and thereupon allege that Defendant Recontrust Company, N.A. ("RECONTRUST") is, and at all times mentioned herein, was a National Association.

4. Plaintiffs are informed and believe and thereupon allege that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is, and at all times mentioned herein, was a Delaware corporation.

5. Plaintiffs are informed and believe and thereupon allege that Defendant Fannie Mae is, and at all times mentioned herein, is a government sponsored enterprise existing under the laws of the United States of America.

6. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1-10, inclusive, and therefore Plaintiffs sue said Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when and as same are ascertained.

7. Plaintiffs are informed and believe and thereupon allege that, at all times herein mentioned and unless otherwise indicated, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and/or employment.

8. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345 and 15 U.S.C. § 1691e(h).

9. This Court's Venue is appropriate pursuant to 28 U.S.C. § 1391.

## FIRST CAUSE OF ACTION
## VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT
### Against Defendants BAC Home Loan Servicing and Doe Defendants 1 -10, inclusive

10. Plaintiffs re-allege and incorporate by reference all allegations in paragraphs 1 to 9, inclusive, of this complaint.

11. Plaintiffs bring this action under the provisions of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691(a)1 et seq. ("ECOA,") for having been denied credit by the above named Defendants in his efforts to obtain a modification of his existing loan.

12. Plaintiffs are the owners of that certain residential real property commonly known as 26772 Mandelieu Dr., Murrieta, California 92562 (hereinafter "Residence" or "Subject Real Property").

13. On or about June 28, 2005 Plaintiffs executed and delivered a promissory note ("NOTE") in favor of Countrywide Bank, FSB ("Countrywide") in the principal sum of $391,000.00. Said Note was secured by a **DEED OF TRUST** ("DOT" or "Governing Document") on the subject real property. (Attached hereto and incorporated by reference as Exhibit A).).

14. On or about February 28th 2011, Defendant BAC accepted to consider and commenced to process Plaintiffs' application for a loan modification under the HAMP program. Plaintiffs provided all of the documents needed in order to be considered for a loan modification.

15. Each Plaintiff is an "applicant" pursuant to 12 C.F.R. § 202.2(e) in that he is a person who applied to Defendant BAC Home Loan directly for an extension and continuation of credit pursuant to 15 U.S.C. § 1691a(b).

16. Plaintiffs are Hispanic individual—a member of a protected class under 15 U.S.C. § 1691(a)(1.)

17. From April 2 2011 to August 16th 2011, Defendant BAC Home Loan verbally provided inconsistent and contradicting stories about the status of Plaintiffs' loan modification. On or about August 16th 2011 Defendant BAC Home Loan verbally expressed to Plaintiffs' counsel's staff that it was going to deny Plaintiffs' application for loan modification because certain documents said Defendant needed were not provided. However, all documents were provided by Plaintiffs. Plaintiff are informed and believe that BAC Home Loan had either misplaced or lost Plaintiff's loan modification documents. Notwithstanding, Plaintiffs were ready willing and able to provide any documents requested by BAC Home Loan.

18. No written explanation was provided by BAC Home Loan for its denial of Plaintiffs' loan modification.

19. The HAMP manual requires that servicers such as BAC Home Loan to provide a written explanation for any denial of the loan modification under the HAMP program. Plaintiffs did not obtain such a correspondence.

20. Furthermore, had Plaintiffs received the letter of denial, Plaintiffs would have an opportunity to correct any deficiency; and also, said denial letter

would provide Plaintiffs an opportunity to appeal the decision. Plaintiffs were denied such an opportunity.

21. Plaintiffs are informed and believe and thereupon allege that, at least in the County of Los Angeles, State of California, Defendant BAC Home Loan has disproportionally denied the loan modifications of individuals who are Black or Hispanic as compared to Caucasian applicants. Plaintiffs are further informed and believe and thereupon alleges that such disproportionate denials have a negative and grossly disparate impact on minority persons who are Black and Hispanic. Defendant's acts are prohibited under the ECOA and under Regulation B.

22. As a direct and proximate result of Defendant BAC Home Loan's action, Plaintiffs have been harmed by losing their home in foreclosure and by losing all monies and savings that were invested in the subject property.

23. Defendants Does 1 to 10 have acted in conjunction with Defendant BAC Home Loan to deny Hispanic homeowners and other minority homeowner loan modification in bad faith.

24. Plaintiffs further seek such relief because the Trustee's deed was obtained as result of the hereinabove alleged ECOA violations.

25. As a result of said Defendants' violation of the ECOA, Plaintiffs seek damages, and for all the expenditures according to proof.

26. Plaintiffs are also informed and believe that Defendant BAC Home Loan Services is apprised of its violation of this Act, but elected to do nothing to remedy such act. Accordingly, Plaintiffs seek exemplary and punitive damages for BAC Home Loan's violation of said act.

## SECOND CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
## Against Defendants BAC Home Loan Servicing, MERS, ReconTrust,
## Fannie Mae
## and Doe Defendants 5 -100, inclusive

27. Plaintiffs re-allege and incorporate by reference all allegations appearing in paragraphs 1 to 26, inclusive, of this complaint as though fully set forth herein in their entirety.

## UNFAIR BUSINESS PRACTICES OF DEFENDANT BAC HOME LOAN AND DOES 5-10

28. Defendant BAC Home Loan is in the business of providing and servicing residential home loans. Through acquisition, Defendant BAC Home Loan services loans originated by Countrywide.

29. As part of Defendant BAC Home Loan's business practice, said Defendant represents to its borrowers that it modifies residential home loans. Although Defendant BAC Home Loan is an experienced lender, the majority of its

loan modification are processed and then denied in bad faith, followed by an immediate foreclosure of the residential property. Plaintiffs are victims of such business practice.

30. Plaitniff is informed and believes that BAC Home Loan's compensation from the U.S. Treasury is approximately $2.6 billion dollars for processing loma modification under the HAMP program. Under said program, if the loan modification has been denied, Defendant BAC Home Loan is required to provide a written explanation for denying the loan modification. No written explanation was provided for said denial to Plaintiffs. Plaintiffs are further informed and believe that BAC Home Loan have rarely issued any such denial letter to other applicants it has denied the loan modification.

31. As a standard operational procedure expressed in the HAMP manual for the servicers, the lender or servicer (i.e. BAC Home Loan) must provide the homeowners a written explanation for denying the loan modification. Thereafter the homeowner must be given an opportunity to correct or appeal said lender / servicer's decision. Defendants did not provide a written explanation for denying the loan modification; which in effect, denied Plaintiffs an opportunity to address BAC Home Loan's denial.

32. As an aggravating factor, Plaintiff is informed and believes that Plaintiffs' loan is guaranteed by Fannie Mae. As a condition to said guarantee,

Defendant BAC Home Loan was required to consider all possible loss

mitigation plans for borrowers such as Plaintiffs. Defendant failed to do so.

Rather, Plaintiffs are informed and believe that Defendant BAC Home Loan

intended to profit by collecting the on the guarantee of Plaintiff's loan from

Fannie Mae after they falsely report to Fannie that Plaintiff did not qualify

for HAMP.

33. As a further aggravating factor, on or about October 20th 2008, Defendant

BAC Home Loan entered into a stipulated judgment with the California

Attorney General. In said stipulated judgment, BAC Home Loan is ordered

to modify and adjust home loans originated by Countrywide to 95% of the

fair market value with a fixed interest not to exceed 6% per annum.

Plaintiffs were borrowers who qualified under said program, but BAC did

not abide by said court order as it pertains to Plaintiffs.

34. Defendants Does 5 -15 have assisted Defendant BAC Home Loan in the

unfair business practices stated herein by processing the HAMP loan

modification in bad faith.

35. Defendant BAC Home loan failure to process Plaitniff's loan modification

in good faith harmed 1) Plaintiffs by causing the latter to lose their homes,

2) by causing Fannie Mae (a government sponsored entity) to purchase

Plaintiffs' home at a substantial loss when it could have been avoided, 3) by

charging the U.S. Government a fee to process the loan modification, although BAC did not intend to do so in good faith.

36. Plaintiffs are informed and believes Defendant BAC home loan's processing and denying loan modifications was without proper justification.

## UNFAIR BUSINESS PRACTICES OF MERS. AND DOES 10 – 20

37. MERS is named as a beneficiary under the DOT. In that same DOT, MERS is also claimed to be a "nominee" of the Lender and its successors and assigns.

38. MERS is a closely held corporation with 24 shareholders, all of each are lenders or affiliated thereto. BAC Home Loan's parent company, Bank of America N.A. is a shareholder of MERS.  Plaintiffs are informed and believes that Defendant BAC Home Loan has a controlling interest in MERS, and the ability to manipulate MERS to its benefit.

39. Plaintiffs are informed and believe that MERS plays a vital and monopolistic role in securitizing and reselling mortgages as mortgage backed securities ("MBS;") in that, it administers, processes and organizes in its database all loans that are securitized and sold in the securities industry.  Any noticeable malfeasance or nonfeasance by MERS has an adverse impact on the lending industry, on matters filed with the S.E.C. (such as the lenders' pooling and

servicing agreement) and individual borrowers. Therefore, it is vital that MERS performs its duties diligently.

40. At least in 2010 to date and as part of its business practice, MERS caused real estate instruments to be recorded with false and misleading notary acknowledgments and with signature of individuals who falsely claim to be MERS's corporate officers.

41. On or about July 23rd 2010, an individual named T.Sevillano executed a corporate assignment to the DOT transferring MERS's beneficial interest in the DOT to Defendant BAC Home Loan. The date of the notarial acknowledgment (i.e. August 2nd 2010) does not match the date of T.Sevillano's signature. (See Exhibit "B")

42. Furthermore, Mr. Sevillano claims to be a corporate officer of MERS when it executed said Assignment as an Assistant Secretary of MERS. Plaintiffs are informed and believe that T.Sevillano has never met nor ever been trained by MERS; nor was there a meeting of the minds between MERS and Mr. T. Sevillano for the latter to be its corporate officer.

43. Although MERS executed the Assignement to the DOT from MERS to BofA Home Loan, MERS's own books and records indicate that the true owner was FANNIE MAE. MERS through its own website states that the investor (owner) of Plaintiffs' loan / DOT is Fannie Mae (See Exhibit C.)

44. On or about April 13th 2011, the Federal Reserve, FDIC, OTS and OCC jointly issued a cease and desist order to combat the type of unfair business practices stated herein. The cease and desist order expressly states in part that MERS was to take such corrective action and remedial measures within 90 days from the date of the order. As of the date of this complaint, and as it pertains to Plaintiffs' loan, MERS has failed to take such corrective action, including the matters pertaining to Mr. T. Sevillano.

45. MERS's conduct stated herein is without proper justification.

46. MERS reckless business practices is a continuation of the reckless lending practices of Countrywide, Bank of America and Bank of America Home loan which has ultimately harmed Plaintiffs.

## UNFAIR BUSINESS PRACTICES OF RECONTRUST DOES 10 – 20 AND DOES 21 - 31

47. Defendant RECONTRUST is the trustee under the DOT

48. Defendant RECONTRUST is also a subsidiary of Bank of America N.A. or Defendant BAC Home Loan.

49. Defendant RECONTRUST employed T.Sevillano, the person who executed the assignment to the DOT. T. Sevillano was instructed by RECONTRUST to execute his name as a corporate assistant secretary of MERS on mortgage

instruments without conducting due diligence and without regards to the truth as to the matters being stated in such instruments.

50. RECONTRUST's reckless business practices is without justification.

51. RECONTRUST's unfair business practice stated herein has facilitated and is a continuation of the reckless lending practices of Countrywide, Bank of America and Bank of America Home loan which has ultimately harmed Plaintiffs and the public.

//

**WHEREFORE**, Plaintiffs pray judgment against Defendants as follows:

ON ALL CAUSES OF ACTION:

1. For restitution and all other money damages in an amount to be proved at trial for Defendants' violation of the Equal Credit Opportunity Act;

2. For an order setting aside the Trustee's sale of September 7th, 2011 of the subject real property;

4 For attorney fees and costs of suit herein incurred; and

5. For such other further relief as the Court may deem just and proper.

Dated: September 15th, 2011

LAW OFFICE OF PIER PAOLO CAPUTO

Pier Paolo Caputo, Esq.
Attorneys for Plaintiffs

Exhibit A

Recording Requested By
First American Title

2882466-12

DOC # 2007-0608427
09/28/2007 08:00A Fee:63.00
Page 1 of 19
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
TAHOMA ADDISON-HULL

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | | T: | CTY | UNI |

103
T
013

[Space Above T.

DCV-2882466
[Escrow/Closing #]

00017921801609007
[Doc ID #]

# DEED OF TRUST
MIN 1001337-0002418035-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated   SEPTEMBER 21, 2007   , together with all Riders to this document.
**(B)** **"Borrower"** is

GUADALUPE ELIAS GUTIERREZ, AND JUAN DE DIOS GUTIERREZ, WIFE AND HUSBAND AS JOINT TENANTS

Borrower's address is
26772 MANDELIEU DRIVE, MURRIETA, CA 92562-_____
Borrower is the trustor under this Security Instrument.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

M Deed of Trust-CA
1006A-CA (08/07)(d/l)                    Page 1 of 12                    Form 3005 1/01





Public Record

**(C)** "**Lender**" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

**(D)** "**Trustee**" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "**Note**" means the promissory note signed by Borrower and dated SEPTEMBER 21, 2007 . The Note states that Borrower owes Lender
THREE HUNDRED NINETY ONE THOUSAND and 00/100

Dollars (U.S. $ 391,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 01, 2037 .

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Public Record

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| | COUNTY | of | RIVERSIDE | : |
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:   9471210048                                      which currently has the address of

26772 MANDELIEU DRIVE, MURRIETA
[Street/City]

California    92562      ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

Public Record

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Public Record

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim,

Public Record

then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and

Public Record

retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Public Record

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice

Public Record

in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time

Public Record

period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security

Public Record

Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GUADALUPE ELIAS GUTIERREZ                    -Borrower

_____ (Seal)
JUAN DE DIOS GUTIERREZ                       -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

Public Record

**State of California**
**County of** SAN DIEGO } ss.

On 9-21-07 before me, HANZELL PALACIOS A NOTARY PUBLIC MP

personally appeared

GUADALUPE ELIAS GUTIERREZ AND JUAN DE DIOS GUTIERREZ

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

HANZELL PALACIOS
COMM. # 1612696
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. Oct. 14, 2009

_____ (Seal)

M Deed of Trust-CA
1006A-CA (06/07)

Page 12 of 12

Form 3005 1/01

Public Record

RECORDER
P.O. BOX 751
RIVERSIDE, CA 92502-0751
(909) 486-7000

# LARRY W. WARD
## COUNTY OF RIVERSIDE
## ASSESSOR-COUNTY CLERK RECORDER

## NOTARY CLARITY

UNDER THE PROVISION OF GOVERNMENT CODE 27361.7, I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: _Hanzel Palacios_

COMMISSION #: _1612898_

PLACE OF EXECUTION: O.C. R.V. S.B.(S.D.)L.A. VENTURA.

DATE COMMISSION EXPIRES: _10-14-09_

DATE: _9/28/07_

SIGNATURE: _S. Espinza_

PRINT NAME: _J. Espinoza_

ACR 186P-AS4RE0(EST. 05/2003)

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-FIRST     day of
SEPTEMBER, 2007 , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

26772 MANDELIEU DRIVE
MURRIETA, CA 92562-_____
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT
BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of          6.750 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
OCTOBER, 2014     , and the adjustable interest rate I will pay may change on that day every
12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate,
and each date on which my adjustable interest rate could change, is called a "Change Date."

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)(d)                          Page 1 of 5




---

Public Record

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    11.750 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 2 of 5

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B.1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Public Record

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Public Record

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
GUADALUPE ELIAS GUTIERREZ                                          -Borrower

_____ (Seal)
JUAN DE DIOS GUTIERREZ                                            -Borrower

_____ (Seal)
                                                                 -Borrower

_____ (Seal)
                                                                 -Borrower

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                     Page 5 of 5

Public Record

Prepared by: TAHOMA ADDISON-HULL

Countrywide Bank, FSB.

Branch #: 0000025
476 THIRD AVENUE
CHULA VISTA, CA 91910
Phone: (619)425-0960
Br Fax No.: (619)427-6020

DATE: 09/21/2007
CASE #:
DOC ID #: 00017921801609007
BORROWER: GUADALUPE ELIAS GUTIERREZ
PROPERTY ADDRESS: 26772 MANDELIEU DRIVE
MURRIETA, CA 92562-____

## LEGAL DESCRIPTION EXHIBIT A

**LOT 4 OF TRACT NO. 22076-1, AS SHOWN BY MAP ON FILE IN BOOK 182 PAGES 14 THROUGH 26, INCLUSIVE, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;**

**EXCEPTING FROM A PORTION OF SAID LAND 60 PERCENT OF ALL OIL AND MINERAL RIGHTS, AS RESERVED IN DEED FROM WATT DEVELOPMENT CORPORATION, A CORPORATION, RECORDED JUNE 27, 1963 AS INSTRUMENT NO. 66984 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;**

**ALSO EXCEPTING FROM A PORTION OF SAID LAND ONE-HALF OF ALL MINERAL RIGHTS, AS RESERVED TO RELEIGH BROWN AND ADELE BROWN, HUSBAND AND WIFE, BY DEED RECORDED MARCH 20, 1950 IN BOOK 1157 PAGE 220 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.**
**A.P.N. 942-121-004-8**

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)



* 2 3 9 9 1 *

* 1 7 9 2 1 8 0 1 6 0 0 0 0 0 1 0 0 8 A *

Public Record

Exhibit B

LandSafe Default

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

AND TAX STATEMENTS TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

TS No. 10-0084374

10 - 8 - 934298

DOC # 2010-0365333
08/04/2010 08:00A Fee:18.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| / | | / | | / | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 062 |
| | | | | | | T: | CTY | UNI | |

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 09/21/2007, EXECUTED BY:
GUADALUPE ELIAS GUTIERREZ, AND JUAN DE DIOS GUTIERREZ, WIFE AND HUSBAND AS JOINT
TENANTS,TRUSTOR: TO RECONTRUST COMPANY, N.A., TRUSTEE AND RECORDED AS INSTRUMENT NO.
2007-0608427 ON 09/28/2007, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF RIVERSIDE
COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED:  JUL 2 3 2010        **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

State of:  **California**            )

County of:  **VENTURA**            )    BY: _____
                                           T. Sevillano, Assistant Secretary

On  AUG 0 2 2010  before me,  AHMAD AFZAL  , notary public, personally appeared
T.SEVILLANO  , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)
            AHMAD AFZAL

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Form asgnmnt (01/09)*

Public Record

Exhibit C

Select borrower type and enter borrower information to see Investor for MIN 1001337-0002418035-1.

Investor for Individual Borrower

Your entries may be either upper or lower case.
*Fields markedare required.
*Last Name:  Gutierrez

*SSN: 569    - 57    - 4389

By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify *the results with their loan servicer.

Submit

Investor for Corporation/Non-Person Entity Borrower

Your entries may be either upper or lower case.
*Fields markedare required.
Corporation/Non-Person Entity Name:

*

*Taxpayer Identification Number:

By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify *the results with their loan servicer.

Submit


Servicer:  Bank of America, N.A.              Phone: (800) 669-6607
           Simi Valley, CA

Investor:  Fannie Mae

Close Window

Name & Address:
Pier Paolo Caputo, Esq. (SBN 176698)
Law Offices of Pier Paolo Caputo
275 S. Beverly Dr., Ste. 202
Beverly Hills, CA 90212
Tel. (213)291-6990 Fax (213)406-1252

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Guadalupe Elias Gutierrez and Juan De Dios Gutierrez<br><br>PLAINTIFF(S)<br><br>v.<br><br>Bac Home Loan Servicing, LP f/k/a/ Countrywide Home Loans Servicing LP; [see attachment]<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-7737 ATW**<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): Bac Home Loan Servicing, LP f/k/a/ Countrywide Home Loans Servicing LP; _____ [see attachment]

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Pier Paolo Caputo, Esq. _____, whose address is 275 S. Beverly Dr., Ste. 202, Beverly Hills, CA 90212 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __SEP 19 2011__

By: ___SHEA BOURGEOIS_____
Deputy Clerk

*(Seal of the Court)*   SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

SUMMONS:

<u>Additionally Named Parties:</u>

Mortgage Electronic Registration Systems, Inc., a Delaware Corporation; Recontrust Company, N.A., a National Association; Fannie Mae a Government Sponsored Enterprise; All Persons Unknown Claiming Any Legal or Equitable Right, Title Estate, Lien Or Interest In The Property Described In The Complaint Adverse to Plaintiffs' Title, Or Any Cloud on Plaintiffs' Title Thereto, And Does 1 to 100, Inclusive.

TO: DEFENDANT(S):  continue

Mortgage Electronic Registration Systems, Inc., a Delaware Corporation; Recontrust Company, N.A., a National Association; Fannie Mae a Government Sponsored Enterprise; All Persons Unknown Claiming Any Legal or Equitable Right, Title Estate, Lien Or Interest In The Property Described In The Complaint Adverse to Plaintiffs' Title, Or Any Cloud on Plaintiffs' Title Thereto, And Does 1 to 10  , Inclusive.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>Guadalupe Elias Gutierrez and Juan De Dios Gutierrez | **DEFENDANTS**<br>Bac Home Loan Servicing, LP f/k/a/ Countrywide Home Loans Servicing LP;<br>Mortgage Electronic Registration Systems, Inc., a Delaware Corporation;<br>Recontrust Company, N.A., a National Association; Fannie Mae a Government |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Pier Paolo Caputo, Esq. (SBN 176698)<br>Law Office of Pier Paolo Caputo<br>275 S. Beverly Dr., Ste. 202, Beverly Hills, CA 90212 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $ to be proved at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC 1691- Violation of ECOA & BP 17200

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☒ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-7737

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiffs (Los Angeles County) | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Mortgage Electronic Registration Systems, Inc. (Delaware) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles / Riverside | |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_    Date 9/15/11

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |